IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

AMERICAN STATES INSURANCE COMPANY,

Plaintiff,

vs.

CAPITAL ASSOCIATES OF JACKSON
COUNTY, INC., an Oregon corporation
d/b/a/ CAPITAL ASSOCIATES, INC., and
JC HAULING COMPANY,

Defendants.                                        No. 02-00975-DRH

## MEMORANDUM & ORDER

**HERNDON, District Judge:**

### I. Introduction

On August 26, 2002, Plaintiff American States Insurance Company ("ASI") filed this action against Capital Associates of Jackson County, Inc., an Oregon corporation d/b/a Capital Associates, Inc. ("Capital Associates") and JC Hauling Company ("JC Hauling"), seeking a declaratory judgment that it has no duty to defend or indemnify Capital Associates in an underlying suit brought by JC Hauling Company and others similarly situated (Doc. 1). In response, Capital Associates filed a three-count counterclaim against ASI (Doc. 24). Before this Court are the parties' cross motions for summary judgment (Doc. 53, 63, 66).[1] For the reasons set forth

---

[1] JC Hauling joins in Capital Associates motion for summary judgment (Doc. 63).



below, the Court denies ASI's motion for summary judgment (Doc. 66) and grants in part and denies in part Capital Associates' and JC Hauling's cross-motions for summary judgment (Doc. 53, 63).

## II. Facts[2]

On June 27, 2002, JC Hauling filed a class action complaint against Capital Associates in the Circuit Court of St. Clair County, Illinois (the "underlying lawsuit") (Doc. 71, ¶ 1; Pl.'s Ex. A). The complaint alleges that on June 17, 2002, Capital Associates sent unsolicited advertisements via facsimile to a class of plaintiffs in violation of the Telephone Consumers Protection Act ("TCPA"), **47 U.S.C. § 227(b)(1)(c)**, which provides a private cause of action for a party who receives unsolicited facsimile advertisement (Doc. 71, ¶ 2). JC Hauling, on behalf of plaintiffs' class, seeks both injunctive and monetary relief, including treble damages for the "willful" and "knowing" violation of the TCPA by Capital Associates (Doc. 71, ¶ 2; Pl's Ex. A, ¶ 17).

Capital Associates was covered by primary and umbrella insurance policies ("Policies") issued by ASI from 1998-2003 (Doc. 71, ¶¶ 5-18, 41). Prior to July 12, 2002, Capital Associates sent a copy of the complaint in the underlying lawsuit to ASI and requested ASI defend them pursuant to coverage provided by the Policies (Doc. 71, ¶ 43; Pl.'s Ex. L at 4). Subsequently, by a letter dated July 12, 2002, ASI informed Capital Associates that it was reserving all rights under the

---

[2]These facts are taken from the parties' joint statement of undisputed facts as well as the attached exhibits, unless otherwise specifically indicated (Doc. 71, 72).

Policies and that it was retaining Attorney John L. McMullin to represent Capital Associates in the underlying lawsuit, subject to its reservation of rights (Doc. 71, ¶ 43; Pl.'s Ex. L at 5).

On August 26, 2002, ASI filed a complaint for declaratory judgment against its insured, Capital Associates, asking this Court to declare that it does not have a duty to defend or indemnify Capital Associates in the underlying lawsuit because either none of the allegations in the complaint trigger coverage under the Policies or the allegations are specifically excluded (Doc. 1). In response, Capital Associates filed a three-count counterclaim against ASI for declaratory judgment (Count I), vexatious refusal to pay under **215 ILCS 5/155** (Count II), and breach of contract (Count III) (Doc. 24). As part of its counterclaim, Capital Associates alleges that it relied on ASI's representation that it covered TCPA claims because it settled a similar claim on Capital Associate's behalf a few weeks earlier (Capital Associates, Inc.'s Statement of Facts in Response to Plaintiff American States Insurance Company's Statement of Unconstested Material Facts; Affidavit of Mark R. Olfson).

On June 17, 2002, the date of the alleged TCPA violation by Capital Associates, ASI insured Capital Associates under primary policy, No. 01-CE-378620-4 ("the 2001-2002 primary policy") effective from July 1, 2001 to July 1, 2002 (Doc. 71, ¶¶ 13, 14; Pl.'s Ex. E).[3] ASI also insured Capital Associates under an umbrella

---

[3]While it is most likely the 2001-2002 Policies apply to the underlying lawsuit, the parties do not directly address this question. In any event, the only other Policies that could arguably apply are the 2002-2003 Policies which are identical in all material respects relevant to the Court's analysis below.

liability policy, No. 01-SU-228887-4 ("the 2001-2002 umbrella policy") effective from July 1, 2001 to July 1, 2002 (Doc. 71, ¶¶ 28, 29; Pl.'s Ex. J). The primary policy includes Commercial General Liability Coverage Form CG 00 01 07 98, which contains in pertinent part the following provisions (Doc. 71, ¶ 37; Pl.'s Ex. E):

### COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. **Insuring Agreement**[4]

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited and described in **Section III - Limits of Insurance;** and

      (2) Our rights and duty to defend end when we have used up the applicable limits of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided

---

[4]The version of Paragraph 1 of **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY** quoted herein is contained in an endorsement entitled, "Amendment of Insuring Agreement - Known Injury or Damage." The language of Paragraph 1 contained in the endorsement replaces the language in Paragraph 1 of the Coverage Form (CG 00 01 07 98) (Doc. 71, ¶ 37 n.1).

   for under Supplementary Payments – Coverages **A** and **B**.

 b. This insurance applies only to "bodily injury" and "property damage" only if:

  (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

  (2) The "bodily injury" or "property damage" occurs during the policy period; and

  (3) Prior to the policy period, no insured listed under Paragraph **1.** of **Section II – Who Is an Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

 c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of **Section II- Who Is An Insured** or an "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change, or resumption of that "bodily injury" or "property damage" after the end of the policy period.

 d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **Section II - Who Is An Insured** or any "employee" authorized by you to give or

-5-

receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

## 2. Exclusions

This insurance does not apply to:

### a. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

* * * *

## COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking

those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgment or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** or **B**.

b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

2. **Exclusions**[5]

This insurance does not apply to:

a. "Personal and advertising injury:"

(1) Caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury;"

(2) Arising out of oral or written publication of material, if done by or at the direction of the

---

[5]This Section was not quoted in the parties' joint statement of undisputed facts, but it is contained in the primary policy.

      insured with knowledge of its falsity;

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;

(4) Arising out of a criminal act committed by or at the direction of any insured;

(5) For which the insured has assumed liability by contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement;

(6) Arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement";

(7) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(8) Arising out of the wrong description of the price of goods, products or services stated in your "advertisement";

(9) Committed by an insured whose business is advertising, broadcasting, publishing or telecasting. However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under Definitions Section; or

(10) Arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

                     \* \* \* \*

**SECTION V– DEFINITIONS**

\* \* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

    a.  False arrest, detention or imprisonment;

    b.  Malicious prosecution;

    c.  The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

    d.  Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or

    e.  Oral or written publication of material that violates a person's right of privacy;

    f.  The use of another's advertising idea in your "advertisement;" or

    g.  Infringing upon another's copyright, trade dress or slogan in your "advertisement."

\* \* \* \*

17. "Property damage" means:

    a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at

>   the time of the physical injury that caused it; or
>
>   b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

In addition, the 2001-2002 umbrella liability policy includes the Commercial Umbrella Liability Coverage Form CU 00 01 01 96, which contains an explicit exclusion for an "advertising injury" "[a]rising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured." (Pl's Ex. J at p. 5, N.4.) The primary policy was amended to exclude such language (Pl.'s Ex. E). Specifically, the primary policy states that "the current 'willful violation of a penal statute' exclusion has been replaced with a 'criminal acts' exclusion." (Pl.'s Ex. E at p. 1 of 5).

### III. Analysis

#### A. Summary Judgment Standard

Summary judgment is proper where the pleadings and affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." **FED. R. CIV. P. 56(c);** ***Wyatt v. UNUM Life Ins. Co. of Am.*, 223 F.3d 543, 545 (7th Cir. 2000);** ***Oates v. Discovery Zone*, 116 F.3d 1161, 1165 (7th Cir. 1997) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).** The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law. ***Wollin v. Gondert*, 192 F.3d 616, 621-22 (7th Cir. 1999).** The Court must consider the entire record,

drawing reasonable inferences and resolving factual disputes in favor of the non-movant. ***Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir. 2000); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999)**.

In reviewing a summary judgment motion, the Court does not determine the truth of asserted matters, but rather decides whether there is a genuine factual issue for trial. ***EEOC v. Sears, Robuck & Co.*, 233 F.3d 432, 436 (7th Cir. 2000)**. No issue remains for trial "unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not sufficiently probative, summary judgment may be granted." ***Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). Accord *Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996), cert. denied, 519 U.S. 1055 (1997); *Tolle v. Carroll Touch, Inc.*, 23 F.3d 174, 178 (7th Cir. 1994)**.

### B. Duty to Defend Standard

As an initial matter, this is a diversity suit and Capital Associates adverts to a possible choice of law question with regard to the interpretation of the Polices at issue. However, Capital Associates concedes that the respective laws of Illinois and Oregon (the other possible candidate) are similar. In that regard Seventh Circuit case law teaches the "false conflict" doctrine, in which an identity of substantive law between competing jurisdictions renders it unnecessary to deal with the choice of law issues at all. ***See, e.g., Barron v. Ford Motor Co. of Canada, Ltd.*, 965 F.2d 195, 197 (7th Cir. 1992); *Int'l Administrators, Inc. v. Life Ins. Co. of N.A.*, 753 F.2d**

**1373, 1376 n.4 (7th Cir. 1985)**. Here, because all parties agree that the construction of the laws of Illinois and Oregon are similar, and the parties cite the law of Illinois throughout their briefs (indicating no outcome determinative differences between the jurisdictions), the Court will avoid entangling itself in the messy conflict of laws analysis and apply Illinois law.

Under Illinois law, "an insurer has two duties to an insured when a lawsuit is filed that may trigger the insurer's policy coverage: the duty to defend and the duty to indemnify." **Aetna Cas. & Sur. Co. v. Prestige Casualty Co., 553 N.E.2d 39, 41 (Ill. App. Ct. 1st Dist. 1990)(citing Zurich Ins. Co. v. Raymark Indus., Inc., 514 N.E.2d 150 (Ill. 1987))**. These duties are separate and distinct, the duty to defend being the broader of the two. **Id. (citing Conway v. Country Cas. Ins. Co., 442 N.E.2d 245 (Ill. 1982))**. Thus, the Court will begin its analysis with ASI's duty to defend.

In determining whether an insurer owes its insured a duty to defend against particular suits, the court must look to the allegations of the underlying complaint and compare the allegations to the relevant provisions of the insurance policies. **See United States Fidelity & Guar. Co. v. Wilkin Insulation Co., 578 N.E.2d 926, 930 (Ill. 1991)**. If the facts alleged fall potentially within the policy's coverage, "the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent." **Id. (citation omitted)**. Refusal to defend is unjustifiable unless it is "*clear* from the face of the underlying complaint[] that the

allegations fail to state facts bringing the case within, or potentially within, the policy's coverage." **Id. (emphasis in the original) (citation omitted)**. Likewise, if the insurer relies on an exclusionary provision, it must be clear and free from doubt that the policy's exclusion prevents coverage. ***Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 833 (7th Cir. 1992)**; ***Bituminous Cas. Corp. v. Fulkerson*, 571 N.E.2d 256, 262 (Ill. 1991)**. In addition, the court must liberally construe the underlying complaint and the insurance policy in favor of the insured. ***Wilkin Insulation Co.*, 578 N.E.2d at 930**. Moreover, "if the underlying complaint[] allege[] several theories of recovery against the insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy." **Id. (citation omitted)**.

### C.  Advertising Injury

In this case, ASI's primary and umbrella liability policies define "advertising injury" as the "oral or written publication of material that violates a person's right to privacy" (Pl.'s Ex. E; Pl.'s Ex. J). ASI first argues that the underlying lawsuit predicated on the TCPA does not violate a person's right to privacy. ASI's Policies do not define the terms "right to privacy." However, Black's Law Dictionary defines the right of privacy as "the right to personal autonomy." **BLACK'S LAW DICTIONARY 1325 (7th ed. 1999)**. The sending of unauthorized fax advertisements is at least arguably an invasion of one's personal autonomy. The nexus between a violation of one's privacy right and the TCPA is also illustrated by the stated purpose

of the Act to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile ("[f]ax") machines and automatic dialers." **Int'l Science & Technology Inst., Inc. v. Inacom Communications, Inc.**, 106 F.3d 1146, 1150 (4th Cir. 1997) (quoting S. Rep. No. 102-178, at 1 (1991), *reprinted in* 1991 U.S.C.C.A.N. 1968)). Indeed, the text of the TCPA contains no less than seven separate references to the statute's aim to protect privacy rights. **See 47 U.S.C. § 227,** *et seq.* Thus, the Court finds the TCPA fundamentally involves a person's right to privacy

Next, ASI argues that even assuming a violation of the TCPA infringes on a person's right to privacy, there was no oral or written publication in this case. ASI argues in the context of defamation, "publication" occurs only if the statements are communicated to someone besides plaintiff. ASI concedes that in this case the "complaint alleges that Capital Associates sent unauthorized facsimiles to numerous persons and entities. If that is true, Capital Associates may have 'published' the material contained in such advertisements to the recipients." (Doc. 67 at 7). However, ASI reasons that no casual connection exists between the publication and the violation of a person's right to privacy. The Court disagrees with ASI and finds that the underlying complaint alleges facts which arguably constitute a written publication. The Policies define "advertising injury" simply "as oral or written publication of material that violates a person's right to privacy." The Policies do not indicate that the word "publication" necessarily means communicating the offending

-14-

material to a third-party as required in the defamation context. And even assuming *arguendo* publication does require publication to a third-party, ASI has conceded as much by stating that the "complaint alleges that Capital Associates sent unauthorized facsimiles to numerous persons and entities. [And thus], Capital Associates may have 'published' the material contained in such advertisements to the recipients." (Doc. 67 at 7).[6] Consequently, the Court finds that underlying complaint has alleged acts of faxing advertisements that constitute a written publication.

ASI further argues that "advertising injuries" at their core involve the misuse of information, not the misuse of technology. To read the policy to require a misuse of information strains the plain language of the contract particularly when under Illinois law doubts and ambiguities will be construed in favor of the insured and against the insurer who drafted the policy. **Outboard Marine Corp. v. Liberty Mutual Ins. Co., 607 N.E.2d 1204, 1213 (Ill. 1992)**. Particularly given the fact that the Policies define "advertising injury" as including injury caused by both: (1) "[o]ral or written publication of material that slanders or libels a person's or organizations goods, products or services"; and (2) "[o]ral or written publication of material that violates a person's right of privacy." It is at least arguable that the Policies cover both the misuse of information and acts that constitute invasion of privacy (and the misuse of technology), not merely the former.

---

[6]The Court notes that the truth of the allegations asserted in the underlying complaint has no bearing on the insurer's duty to defend the underlying lawsuit. **See Wilkin Insulation Co., 578 N.E.2d at 930 ("[T]he insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent.")**

It is also clear that none of the exclusions in the primary policy apply to the underlying lawsuit. While it is arguable that a violation of the TCPA could constitute a violation of a penal statute, the primary policy was specifically amended to exclude such language.[7] Thus, because the Court finds that the Policies potentially apply to the underlying complaint and no exclusion prevents coverage, ASI has a duty to defend Capital Associates in the underlying lawsuit.

### D. Duty to Indemnify

Unlike the duty to defend, the insurer's obligation to indemnify an insured for loss turns upon the facts of the underlying suit. When those facts are still in dispute, a declaratory judgment action seeking a determination of the insurer's duty to indemnify is premature. As one Illinois court has emphasized, "[a] declaratory judgment action to determine the insurer's duty to indemnify its insured, brought prior to a determination of the insured's liability, is premature since the question to be determined is not then ripe for adjudication." **Maryland Cas. Co. v. Chicago & N.W. Transp. Co., 466 N.E.2d 1091, 1095-96 (Ill. App. Ct. 1st Dist. 1984).** Thus, the Court declines to rule on ASI's duty to indemnify at this juncture. On the basis of prematurity, the Court also declines to rule on Capital Associates' counterclaims for vexatious refusal to pay under **215 ILCS 5/155** and its common law breach of contract claims.

---

[7] The introduction to the 2001-2002 primary policy states "the current 'willful violation of a penal statute' exclusion has been replaced with a 'criminal acts' exclusion." (Pl.'s Ex. E).

-16-

## IV. Conclusion

For the reasons set forth above, the Court **DENIES** ASI's motion for summary judgment (Doc. 66). The Court **GRANTS in part** Capital Associates' and JC Hauling Company's cross-motions for summary judgment finding that ASI has a duty to defend Capital Associates in the lawsuit filed in the Circuit Court of St. Clair County, Illinois under the caption, ***JC Hauling Company, individually and on behalf of all other similarly situated, v. Capital Associates of Jackson County, Inc., an Oregon Corporation d/b/a Capital Associates, Inc.***, **Case No. 02 L 0425**. The Court **DENIES** Capital Associates' and JC Hauling's motions in all other respects (Doc. 53, 63).

**IT IS SO ORDERED.**

Signed this 9th day of December, 2003.

*/s/ David R. Herndon*
**DAVID R. HERNDON**
**United States District Judge**