# United States Court of Appeal**FILED**

## For the Seventh Circuit

### Chicago, Illinois 60604

**NOTICE OF ISSUANCE OF MANDATE**

JAN 2 8 2005

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

DATE:    January 27, 2005

TO:      Norbert G. Jaworski
         United States District Court
         Southern District of Illinois
         Room 142
         750 Missouri Avenue
         P.O. Box 186
         East St. Louis, IL  62202

FROM:    Gino J. Agnello, Clerk

RE:      04-1659
         American States v. Capital Assoc Jackso
         02 C 975, David R. Herndon, Judge

         Herewith is the mandate of this court in this appeal, along
         with the Bill of Costs, if any.  A certified copy of the
         opinion/order of the court and judgment, if any, and any
         direction as to costs shall constitute the mandate.

         [ ] No record filed
         [X] Original record on appeal consisting of:
**ENCLOSED:**                              **TO BE RETURNED AT LATER DATE:**
         [2]     Volumes of pleadings              [ ]
         [ ]     Loose pleadings                   [ ]
         [ ]     Volumes of transcripts            [ ]
         [1]     Volumes of exhibits               [ ]
         [ ]     Volumes of depositions            [ ]
         [5]     In Camera material                [ ]
         [ ]     Other_____     [ ]

                 Record being retained for use     [ ]
                 in Appeal No. _____

         Copies of this notice sent to:        Counsel of record
         [ ]     United States Marshal
         [ ]     United States Probation Office
**NOTE TO COUNSEL:**
         If any physical and large documentary exhibits have been filed in
         the above-entitled cause, they are to be withdrawn ten days from the
         date of this notice.  Exhibits not withdrawn during this period will
         be disposed of.

         Please acknowledge receipt of these documents on the enclosed copy
         of this notice.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
**RECEIVED**
         Received above mandate and record, if any, from the Clerk, U.S.
         Court of Appeals for the Seventh Circuit.
Date: _____
JAN 2 8 2005
(1071-120397)                              Deputy Clerk, U.S. District Court
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

# United States Court of Appeals

## For the Seventh Circuit

## Chicago, Illinois 60604

### BILL OF COSTS

**Date: January 27, 2005**

Taxed in favor of: Appellant - American States

Appeal No. 04-1659

AMERICAN STATES INSURANCE COMPANY,
                    Plaintiff - Appellant
    v.

CAPITAL ASSOCIATES OF JACKSON COUNTY, INCORPORATED, an
Oregon Corporation doing business as CAPITAL ASSOCIATES,
INCORPORATED, and JC HAULING COMPANY, individually and
on behalf of all other similarly situated,
                    Defendants - Appellees



CERTIFIED COPY

Appellate Court No.: 04-1659          Docketed on: 3/18/04
Short Caption:      American States v. Capital Assoc Jackso
District Court Judge: David R. Herndon
District Court No.:  02 C 975

|                                                              | Cost Of Each Item |          |
| ------------------------------------------------------------ | ----------------- | -------- |
| 1.  For docketing a case on appeal or review or docketing any other proceeding _____ | _____ | _____ |
| 2.  For reproduction of any record or paper, per page _____ | _____ | _____ |
| 3.  Reproduction of briefs:                                  | $  429.50         |          |
|                                                              | Total   $  429.50 |          |

(1077-081992)

CERTIFIED COPY

In the

# United States Court of Appeals
## For the Seventh Circuit

No. 04-1659

AMERICAN STATES INSURANCE COMPANY,

*Plaintiff-Appellant,*

*v.*

CAPITAL ASSOCIATES OF JACKSON COUNTY, INC., *et al.,*

*Defendants-Appellees.*

---

Appeal from the United States District Court
for the Southern District of Illinois.
No. 02-00975-DRH—**David R. Herndon,** *Judge.*

---

ARGUED NOVEMBER 8, 2004—DECIDED DECEMBER 23, 2004

---

Before BAUER, EASTERBROOK, and KANNE, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* According to a complaint filed in state court, Capital Associates of Jackson County sent an unsolicited advertisement to the fax machine of JC Hauling Company, thus violating 47 U.S.C. §227(b)(1)(C). JC Hauling launched a class action on behalf of all recipients of Capital Associates' junk faxes. Capital Associates tendered the defense to American States Insurance Co., which had issued a policy covering "advertising injury," among other harms. American States, which has under-

2                                         No. 04-1659

taken the defense under a reservation of rights, filed this
federal suit seeking a declaratory judgment that the policy
does not call for either defense or indemnity.

"Advertising injury" is defined to include "[o]ral or written
publication of material that violates a person's right of
privacy." Another portion of the policy excludes injury that
is "expected or intended from the standpoint of the insured."
American States contended that sending unsolicited adver-
tising by fax does not cause "advertising injury" and that,
if it does, the recipient's loss is "expected or intended from
the standpoint of the insured." But the district judge held
that an unsolicited fax invades the recipient's "privacy" and
that American States therefore must defend its insured.
The judge did not discuss the policy's exclusion of expected
or intended consequences and left several items dangling.
Some of the omissions are understandable. For example,
the judge thought it premature to decide whether Ameri-
can States must indemnify Capital Associates (and, if so,
in what amount), given the unresolved status of the under-
lying suit. Other omissions are harder to appreciate. For
example, Capital Associates filed a counterclaim seeking
punitive damages on the ground that American States has
vexatiously and wilfully refused to defend or indemnify its
insured. That absurd claim should have been dispatched
promptly. American States has not refused to defend; it
has provided a defense under a reservation of rights. It has
not refused to indemnify; the time to pay has not arrived.
It has not acted vexatiously; this suit represents an effort
to clear up an interpretative disagreement. Presenting a
dispute to a court for resolution is hardly a reason to award
punitive damages! But instead of resolving all claims that
were ready for decision, the district court dismissed them
"without prejudice"—indeed, it dismissed the whole *suit*
"without prejudice," even though its resolution of the duty-
to-defend issue is conclusive.

No. 04-1659                                                      3

   By dismissing everything without prejudice, without dis-
tinguishing between claims that had been fully addressed
and those whose resolution had been postponed, the dis-
trict judge created a jurisdictional problem for the parties
and this court. Dismissals without prejudice are canoni-
cally non-final and hence not appealable under 28 U.S.C.
§1291. See, e.g., *Brown v. Argosy Gaming Co.*, 360 F.3d 703
(7th Cir. 2004). The prospect facing American States,
however, is that, if Capital Associates should win the state
suit, there would be no further dispute about indemnity
and no reason to renew the federal litigation. That would
leave American States without a means to obtain appellate
review of the duty-to-defend question, for by then it would
be too late to appeal the federal judgment. A duty-to-
defend issue will survive the state case whether or not
Capital Associates prevails, for if American States is right
it is entitled to reimbursement from its client for the
expenses of putting on the defense. But if American States
may appeal now in light of the risk that a dispute about
who pays for the defense will evade appellate resolution
later, there is a substantial chance that the dispute will
return to this court if Capital Associates loses the state case
and the parties dispute the amount of required indemni-
fication, or Capital Associates reasserts its demand for
punitive damages.

   It would have been better had the district court stayed
proceedings until the underlying suit reached a conclusion.
The loser or losers in the federal litigation then could have
appealed from a truly final disposition. That would have
avoided any risk that Capital Associates could be deprived
of effective appellate review, while avoiding all risk that
this court would have to grapple with the same dispute more
than once. But unless we treat the district court's actual
disposition as "final," we lack authority even to remand for
entry of such a stay. A corollary to the norm that dismissals

without prejudice are non-final is recognition that when
the district judge misdescribes as "without prejudice" a dis-
position that is conclusive in practical effect, the court of
appeals possesses jurisdiction. See, e.g., *Dixon v. Page*, 291
F.3d 485 (7th Cir. 2002). Our situation calls the corollary
into play. And because the parties have fully briefed the
duty-to-defend question, and it turns out to be dispositive
of all issues, we resolve it now rather than simply direct the
district to put the case on ice. See *Crum & Forster Corp. v.
Resolution Trust Corp.*, 156 Ill. 2d 384, 398, 620 N.E. 2d
1073, 1081 (1993) (where there is no duty to defend, there
is also no duty to indemnify).

"Privacy" is a word with many connotations. The two
principal meanings are secrecy and seclusion, each of
which has multiple shadings. See *Restatement (Second) of
Torts* §652 (1977); Richard S. Murphy, *Property Rights as
Personal Information*, 84 Geo. L.J. 2381 (1996). A person
who wants to conceal a criminal conviction, bankruptcy, or
love affair from friends or business relations asserts a claim
to privacy in the sense of secrecy. A person who wants to
stop solicitors from ringing his doorbell and peddling vacuum
cleaners at 9 p.m. asserts a claim to privacy in the sense
of seclusion. Some other uses of the word "privacy" com-
bine these senses: for example, a claim of a right to engage
in consensual sexual relations with a person of the same
sex, or to abort an unwanted pregnancy, has both informa-
tional (secrecy) and locational (seclusion) components, with
an overlay of substance (the objection to governmental
regulation).

American States contends that its advertising-injury cov-
erage deals with secrecy rather than seclusion. The language
reads like coverage of the tort of "invasion of privacy,"
where an oral or written statement reveals an embarrass-
ing fact, see *Briscoe v. Readers' Digest Association, Inc.*, 4
Cal. 3d 529 (1971), overruled on first amendment grounds

No. 04-1659                                                    5

by *Gates v. Discovery Communications, Inc.*, 2004 Cal. Lexis
11656 (S. Ct. Cal. Dec. 6, 2004), or as in *Time, Inc. v. Hill*,
385 U.S. 374 (1967), brings public attention to a private
figure, or casts someone in a false light through publica-
tion of true but misleading facts. *See Lovgren v. Citizens
First National Bank*, 126 Ill. 2d 411, 417-18, 534 N.E. 2d
987, 989 (1989). See also *Curtis-Universal, Inc. v. Sheboygan
Emergency Medical Services, Inc.*, 43 F.3d 1119, 1124 (7th
Cir. 1994); *Hayes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222 (7th
Cir. 1993) (Illinois law). Perhaps the language reasonably
could be understood to cover improper disclosures of Social
Security numbers, credit records, email addresses, and
other details that could facilitate identity theft or spam-
ming. See *Reno v. Condon*, 528 U.S. 141 (2000) (rejecting
constitutional challenge to a federal statute limiting access
to information in drivers' records). See also *Leopold v. Levin*,
45 Ill. 2d 434, 259 N.E. 2d 250 (1970) (recognizing identity
misappropriation as a tort). Cf. *Kyllo v. United States*, 533
U.S. 27 (2001) (discussing privacy interest in thermal
emissions from homes); Jeffrey Rosen, *The Unwanted Gaze*
(2000).

   JC Hauling does not allege that Capital Associates pub-
lished any information about it, and the district judge did
not directly address whether the policy is limited to publi-
cation of secret information. Indeed the judge did not remark
the difference between secrecy and seclusion. Instead the
judge stated that §227(b)(1)(C) has been understood to pro-
tect privacy—see *International Science & Technology
Institute, Inc. v. Inacom Communications, Inc.*, 106 F.3d
1146, 1150 (4th Cir. 1997) (dictum) (quoting from legisla-
tive history)—and deemed that observation conclusive.
*International Science & Technology Institute* used the word
in the sense of seclusion: an unexpected fax, like a jangling
telephone or a knock on the door. can disrupt a house-
holder's peace and quiet, even though it is easy to throw a

---

junk fax, like a piece of junk mail, in the trash without any risk that someone will observe activities that occur inside one's home. Section 227(b)(1)(C) doubtless promotes this (slight) interest in seclusion, as it also keeps telephone lines from being tied up and avoids consumption of the recipients' ink and paper. (It is these latter economic interests that furnish the basis of judicial decisions rejecting constitutional challenges to restrictions on uninvited faxes. See *Destination Ventures, Ltd. v. FCC*, 46 F.3d 54 (9th Cir. 1995); *Missouri ex rel. Nixon v. American Blast Fax, Inc.*, 323 F.3d 649 (8th Cir. 2003).) But the question is not how the word "privacy" was used in the debates that led to §227(b)(1)(C), or in its implementing regulations, but what the word means in this insurance policy. To say, as the district court did, that §227(b)(1)(C) protects privacy, and then stop the analysis, is to avoid the central question in the case: whether the policy covers the sort of seclusion interest affected by faxed ads.

One reason to doubt that the policy covers the claim is the identity of the plaintiff. JC Hauling is a corporation, and businesses lack interests in seclusion. It is not just that they are "open for business" and thus welcome phone calls and other means to alert them to profitable opportunities. It is that corporations are not alive. Where does a corporation go when it just wants to be left alone? Most states hold that business entities lack privacy interests. See *Restatement (Second) of Torts* §652I Comment c. Cf. *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950). (Our point is not that business entities lack interests protected by §227(b)(1)(C), but that it does not help to call them "privacy" interests.) Corporate managers have interests in seclusion, but the state suit was filed by the corporation rather than by any natural person. A fax is less disturbing than a phone call, and a business-related call at work does not invade the managers' interest in seclusion.

No. 04-1659                                    7

The class of junk-fax recipients may include real rather
than artificial people, however, so we cannot stop yet. The
structure of the policy strongly implies that coverage is
limited to secrecy interests. It covers a "publication" that
violates a right of privacy. In a secrecy situation, publica-
tion matters; otherwise secrecy is maintained. In a seclu-
sion situation, publication is irrelevant. A late-night knock
on the door or other interruption can impinge on seclusion
without any need for publication. Contacting one customer
at a time may not be "publication" at all for purposes of
advertising-injury coverage. See *Western States Insurance
Co. v. Wisconsin Wholesale Tire, Inc.*, 184 F.3d 699 (7th
Cir. 1999) (Illinois and Wisconsin law). Perhaps automated
faxes to hundreds of recipients could be deemed a form of
publication, but this would be irrelevant to the seclusion
interest. To put this differently, §227(b)(1)(C) condemns a
particular means of communicating an advertisement, rather
than the contents of that advertisement—while an adver-
tising-injury coverage deals with informational content.

Readers doubtless will note that, although Illinois law
supplies the rule of decision, we have not cited any Illinois
case interpreting the scope of "privacy" coverage under an
advertising-injury clause. That is because Illinois has not
issued any pertinent decision at any level (trial or appel-
late). The closest is *Melvin v. Burling*, 141 Ill. App. 3d 786,
789, 490 N.E. 2d 1011 (3d Dist. 1986), which holds that an
interest in seclusion is "privacy" only if the subject of the
intrusion is itself private. This does not resolve our contro-
versy (though it does offer a little support for American
States). Nor, for that matter, has the highest court of any
state grappled with the subject. Almost all litigation of this
kind has proceeded in federal district court. Most of these
decisions have come out the same way as our district judge,
and for the same reason—and thus have failed to distinguish
secrecy from seclusion, or to appreciate that the statute's

No. 04-1659

drafters and the insurance may use the word "privacy" in
different ways. See, e.g., *Park University Enterprises, Inc.
v. American Casualty Co.*, 314 F. Supp. 2d 1094, 1102-11
(D. Kan. 2004); *Universal Underwriters Insurance Co. v.
Lou Fusz Automobile Network, Inc.*, 300 F. Supp. 2d 888,
894-96 (E.D. Mo. 2004); *Prime TV, LLC v. Travelers
Insurance Co.*, 223 F. Supp. 2d 744, 752-53 (M.D. N.C. 2002).
We disapprove these and similar decisions. Ours is the
first federal appellate decision on the subject, and for
reasons already given we hold that an advertising-injury
clause of the kind in American States' policy does not cover
the normal consequences of junk advertising faxes.

For completeness we add that the property-damage
clause in the policy is no more useful to Capital Associates;
junk faxes use up the recipients' ink and paper, but senders
anticipate that consequence. Senders may be uncertain
whether particular faxes violate §227(b)(1)(C) but all senders
know exactly how faxes deplete recipients' consumables.
That activates the policy's intentional-tort exception (which
applies to the property-damage coverage though not the
advertising-injury coverage): it forecloses coverage when
the recipient's loss is "expected or intended from the stand-
point of the insured." Because *every* junk fax invades the
recipient's property interest in consumables, this normal
outcome is not covered.

So clear is this that American States need not provide a
defense to the suit, even though Illinois (whose law applies)
requires insurers to defend when coverage is a close issue,
whether or not the policy would provide indemnity. See,
e.g., *Aetna Casualty & Surety Co. v. Prestige Casualty Co.*,
195 Ill. App. 3d 660, 553 N.E. 2d 39 (1st Dist. 1990). This
issue is not close.

REVERSED

No. 04-1659                                                9

A true Copy:

Teste:

Clerk of the United States Court of
Appeals for the Seventh Circuit

USCA-02-C-0072—12-23-04

# United States Court of Appeals

## For the Seventh Circuit

## Chicago, Illinois 60604

**JUDGMENT - WITH ORAL ARGUMENT**



**Date: December 23, 2004**

**BEFORE:**         Honorable WILLIAM J. BAUER, Circuit Judge

                Honorable FRANK H. EASTERBROOK, Circuit Judge

                Honorable MICHAEL S. KANNE, Circuit Judge

No. 04-1659

AMERICAN STATES INSURANCE COMPANY,
                    Plaintiff - Appellant
    v.

CAPITAL ASSOCIATES OF JACKSON COUNTY, INCORPORATED, an
Oregon Corporation doing business as CAPITAL ASSOCIATES,
INCORPORATED, and JC HAULING COMPANY, individually and
on behalf of all other similarly situated,
                    Defendants - Appellees

Appeal from the United States District Court for the
Southern District of Illinois
No. 02 C 975, David R. Herndon, Judge

        The judgment of the District Court is REVERSED, with costs,
    in accordance with the decision of this court entered on this date.


(1061-110393)